at all. Ms. Hill for the appellant, Ms. Johnson for the appealee. Good morning, counsel. Good morning. Ms. Hill, you may start arguing. Thank you so much. Good morning, your honors, and may it please the court. I have requested five minutes for the appellant in this matter. But for the District of Columbia's refusal to accept responsibility for Mr. Seth's care and custody, Mr. Seth would not be in federal custody today. Even now, federal law would require the U.S. Bureau of Prisons to release him for community-based treatment in D.C. Thus, the District's refusal to uphold its obligations under the ADA, to include Mr. Seth in its program, and to treat him in an integrated setting is the direct cause of his current incarceration. The District's refusal is the only barrier to access to community-based services for Mr. Seth, and that barrier must be removed. Mr. Seth has waited over three years in federal prison without services, mostly in solitary confinement because of his intellectual disability, and now at high risk of COVID-19 because of his asthma. The District is no more correct in blaming the Bureau of Prisons for D.C.'s own failure to act here than it was in Brown v. D.C. when it blamed the Housing Authority, rather than its own lack of transition services, for people's inability to leave nursing homes. The ADA and Section 504 require the District to provide treatment services to Mr. Seth equally and to do so in the most integrated setting appropriate. Failing to do so... Can you hear me? Yes. This is Judge Rogers. What is the accommodation that your client seeks, given that the District of Columbia's argument is that the statute gives it a discretionary decision, and implicitly it's arguing that it has to provide services to your client? What Mr. Seth seeks in this case is that the District take care and custody of him in order for him to receive community-based services. We don't agree that civil commitment is a prosecutorial function. In many states, and in D.C. prior to 2018, there are mechanisms for voluntary civil commitment, as well as third-party civil commitment. I guess I wasn't clear in my question. The District of Columbia says it has discretion under the statute, which only speaks of may, not to act. That's correct. That's what they argue. We believe that, and in most circumstances, the IDRA, the federal IDRA, would not require them to undertake custody of Mr. Seth. However, CEDA and the ADA work together in sync with IDRA in this case. The ADA requires D.C. to serve Mr. Seth. It is reasonable, as the District itself decided, to civilly commit him pursuant to CEDA. CEDA permits that, and we believe it is mandatory to do so. Is the District's failure to provide services to your client, which you allege is the but-for cause of his federal commitment, is that sufficient to state an Olmstead claim? It is. Sorry. Or does the District Court need to engage in some sort of proximate cause analysis? No. The failure of D.C. both before and since Mr. Seth's federal civil commitment, the failure of D.C. to provide those services is the but-for cause of his current federal civil commitment. If the federal civil commitment stood in the way of D.C. taking custody of him, which we don't believe it does, they would still be liable for the damages and declaratory relief that Mr. Seth also seeks here. But we believe the federal civil commitment in no way stands in that way. They do not have prosecutorial discretion, and they only raise prosecutorial discretion in this appeal, never before the District Court. So that argument is waived here. Well, so you think that your allegations are sufficient with respect to the but-for cause to state an Olmstead claim? Yes, we do, Your Honor. The remaining arguments that D.C. has made and that the District Court relied on are affirmative defenses as well as factual questions that can't be resolved at the motion-to-dismiss stage. So, your question then that under the ADA and CEDA, which the government's brief says you have now abandoned, but I gather you have not, was the District required to respond to the Attorney General's letter? The District had already agreed to seek civil commitment pursuant to CEDA prior to the Attorney General's letter. They should have implemented that commitment even prior to the Attorney General's letter, but they should have responded as well. Well, not on should have, but were they—is it your position that the District was legally obligated to respond? Not pursuant to the IDRA, the federal IDRA, for the civil commitment, but the District was required to take care and custody of Mr. Seth and provide him services both before that request was even made and in response to and since that request was made. So, is that a yes answer to my question? Yes, Your Honor. And so, it's the District's failure to respond that it underlies the District Court's error here? No, not entirely. The District's failure to provide services to Mr. Seth prior to that request from the federal government was a violation of the ADA, not simply old— I'm trying to focus on this step. Once the Attorney General sent a letter, what was the District of Columbia obligated to do, if anything? The District of Columbia was obligated under the ADA to seek to take care and custody of Mr. Seth. Well, I'm trying to get a more mundane point. The Attorney General writes a letter. Was there some obligation under federal or local law for the District of Columbia to respond in as much as the federal statute says that there is a preference for state or local provision of these services? I'm trying to understand the statutory scheme here. Certainly. The IDRA does not, in the absence of a federal or state obligation, impose an obligation by itself to respond to the federal government's request. But that was another opportunity for the District to follow its ADA obligations and offer to take care and custody of him. That failure to respond is yet another— So, the federal government would have to sue the District of Columbia for an answer? The federal government—no, not the federal government, but Mr. Seth has his own obligation, has his own rights under the ADA to require D.C. to take care and custody of him, either in response to the Attorney General's request or on its own initiative. What about the District Court's comment that there were alternative remedies available to your client? There's no—I believe the alternative remedies that she considered were going through the Bureau of Prisons or challenging the federal civil commitment. However, the Eastern District of North Carolina stated that this case had already been filed and that the services that we were looking at that would have required care and custody by D.C. and services to D.C. were not relevant to the Eastern District of North Carolina's civil commitment decision because they were not relevant to the federal government's request. Well, in the government's brief, it notes that the Attorney General has authority to enter into contracts for services. Why would—sorry for the syntax here, but why wouldn't there be an alternative available to your client to request, in other words, that the federal government pay for these services? That's a great question. The BOP doesn't offer—in fact, the federal government doesn't have a federal medical system. What it does is pay states to develop their own medical system. The federal government has already provided through Medicaid—D.C. gets 70 percent of its government—to provide these kinds of services. If we were to pursue something through the BOP, we would be asking them to create a new system. So the most direct way—and the federal government has already paid for these services to be provided to all D.C. residents—is to seek the District of Columbia to do what it is already getting federal money to do, which it had already committed to do and which it's already totally capable of doing. And I suppose one other point. Why does the District Court's heavy reliance on dangerousness, on the dangerousness finding by the District Court in North Carolina, create reversible error here? A couple of reasons. First, the Eastern District of North Carolina considered dangerousness only without the availability of the services that Mr. Seth is entitled to under D.C. law. So it doesn't address the question of whether he's dangerous. Nonetheless, Mr. Seth is not arguing that he doesn't meet the standard of dangerousness for either CEDA or IDRA in the absence of those services, which those don't consider those services. And so the Eastern District of North Carolina went ahead and said that because D.C. had failed to respond, those services were not available and not before the court. Those services are exactly at issue in this case. So those two cases were not dealing with the same questions. And then dangerousness is a fact question as well as an affirmative defense of direct threat. And the burden of that is the same. I have a couple of questions, Judge Carlin. Does your Olmstead... So in order to implement what you want here, does the District of Columbia first have to commit, Mr. Seth? Not necessarily. What they have to do is take care and custody of Mr. Seth to satisfy the IDRA. They have to take custody, right? Care and custody, yes. Well, okay. But the point I'm focusing on is the custody. Doesn't that require a D.C. commitment? Not as far as we know. The D.C., the District had determined that commitment through CEDA was an appropriate and reasonable measure to do that. Other states have described in the amici disability services expert cases, amicus brief, do it through a variety of ways, including just simply supervised services, which are also available in D.C. Well, hold on for a second. So the federal statute requires the taking of custody, correct? Yes. And so the District of Columbia would have to take custody. That means Mr. Seth would not be allowed to leave unless the various requirements of the statute, of the District statute are fulfilled. But he has to take custody. This isn't like voluntary treatment, right? I believe that's correct. They have to take responsibility for ensuring his treatment. Oh, not responsibility, custody. That is, they have to assure that he's under their control. Under the federal statute. Isn't that what the word custody means? I'm not sure, but other states manage to do this through both civil commitment and through other ways. But yes, if... I'm not asking what the states need to do, I'm asking the meaning of the federal statute. That's all. I'm trying to figure out the relationships between these different... Right. I understand. I have not been able to find any cases that define the word custody. So I believe that remains a fact question. That's not a question, that's a law question. So imagine, assume for the purposes of the discussion that custody means what we normally think of custody. That means they're involuntarily under the control of the BOP, either BOP in the federal system or some entity in the District of Columbia. So your Olmstead claim amount to a claim that the ADA is a cause of action to require civil commitment in the District of Columbia by the District of Columbia. Is that what your Olmstead claim is? Well, our claim is that the District of Columbia's failure to provide integrated services has led to his institutionalization and that they have a reasonable means to address that. One of those is CETA. There may be others and we would be happy to litigate what those others are, but the District has pointed to none. Well, there has to... I'm assuming that there has to be civil commitment of some kind. So the only way that happens is if the ADA requires the District to civilly commit Mr. Seth. Is that wrong or right? If that presumption is true, then yes. Okay. So could I just be clear on that point? Let's assume a hypothetical situation where your client is not under a federal civil commitment order and he is just a resident of the District of Columbia. But he needs these services. Are you answering to Judge Garland's question that the only way the District of Columbia can lawfully provide those services is civilly commit him? No, Your Honor. Because in the earlier discussion with the District of Columbia, when it was proceeding to develop a plan for your client, there was discussion that when the District of Columbia had its plan completed, then it would civilly commit him or it would petition for civil commitment. Mm-hmm. Is that not correct? That is correct that that was their proposal. At the point before Mr. Seth was federally civilly committed, there was no obligation for DC to take care and custody of him in order to provide him services. In fact, most people who are not federally civilly committed can and are eligible and are provided those services without any kind of formal legal custody from the District. But in that case, the District, prior to federal civil commitment, said they would be comfortable providing the services if he were civilly committed, and Mr. Seth agreed to that. Now that he has been federally civilly committed because of the District's own failure to act, they have to take care and custody, whatever the meaning of that is, through the IDRA. And if that is civil commitment, having already determined that that was reasonable, it continues to be reasonable now. Is there any reason why the Department of Justice or the United States is not equally bound by the ADA and the Rehabilitation Act with respect to the federal government? The ADA doesn't cover the federal government, but the Rehabilitation Act does. The regulations for the Rehabilitation Act applicable to the federal government are somewhat different. I thought the regulations say they're to be treated the same. The ADA and the Rehabilitation Act claims are the same. Yeah, there are two different sets of regulations for the Rehabilitation Act. One is for federally conducted activities and one is for federally funded activities. We're in the ones that are federally funded. But that's not a significant difference here. The Department of Justice and Bureau of Prison do have obligations under Section 504, but in this particular case, the federal government doesn't have a federal healthcare system. Instead, what it does is provide funding to the states to provide those healthcare systems. So, in order to get the BOP or the Justice Department to be able to serve Mr. Seth in an integrated setting, they would have to create a whole new system. Well, is it your position that under the ADA, they have to? Is it your position under Olmstead and the ADA that they have to put him in the least restrictive facility possible? Most courts addressing the issue of whether an entity has to create a new set of services or a new system have held that that's not a reasonable modification. So, it's entirely possible that the federal government would not have to create a healthcare system in order to address Mr. Seth's needs. But would it have to contract with somebody to do it? It already has contracted with the district and the other states to do that. Or a private entity? I'm sorry. I couldn't hear you. I'm sorry. Or a private entity? Possibly, but having already contracted with the state to provide the entire healthcare system, having the state have that system already available and able reasonably to treat Mr. Seth, that seems like an unnecessary burden to force the BOP to undertake in this particular instance. Can I ask you about, you said that you had not dropped your CETA claim. I was a little unsure about that. You've dropped the claim that CETA itself provides a private right of action or not? We have, but I raised the CETA being mandatory and therefore not subject to prosecutorial discretion because the district court based its decision on the lack of a private right of action. We have not appealed that determination regarding the lack of a private right of action because the private right of action under the ADA and Section 504 addresses that. We do continue to believe that CETA is mandatory and does provide substantive guidelines that allow this court or the district court to review any prosecutorial decision under CETA. One more question for you. With respect to the argument about the treatment of mental illness and intellectual disability, is it our position that the DC code provisions on these two ADA? I think you broke up a little bit, but I'm taking the question as, is it our position that the two code provisions, the CETA provisions for civil commitment and the Ervin Act provisions for commitment of people with mental illness violate the ADA? I would say this is not a facial challenge to CETA and the Ervin Act. I'm saying what we're saying is an individual case and in the particular instance of Mr. Seth, that the way the district is applying CETA, in fact, the way the district is not implementing CETA at all for people with intellectual disabilities and specifically Mr. Seth is a violation of the ADA. So you're not challenging the district's determination in the two code sections? No, not at all. To treat the two differently? No, we are not. Thank you. All right, we'll hear from the District of Columbia. Good morning. May it please the court, Holly Johnson for the District of Columbia. I'd like to start with the question that has been absorbing the judges regarding whether the Federal Bureau of Prisons could provide a remedy. I think that this issue is dispositive of the case and I'd like to take a moment to explain the difference between conditional release under the IDRA and civil commitment under CETA because I believe Mr. Seth is treating the two as one and the same. First of all, the district has never rejected the idea of accepting Mr. Seth under a contract with the United States under conditional release. The district believes that is much safer than civil commitment and here is why. The District of Columbia has no lockup facilities. If the district assumes custody via civil commitment, that's the only way to assume custody over Mr. Seth, then the United States will let go of its jurisdiction over Mr. Seth and if Mr. Seth then breaks the rules, if he consumes drugs, if he looks at child pornography, if he starts having contact with children again, the district cannot lock him up. It doesn't have a facility to do so. Moreover, and this is really important, in the proffered amended complaint, Mr. Seth alleges that the district could place Mr. Seth outside of the district in a lockup facility. Now, we dispute that as a matter of fact but given where we are in this procedure, even if that is so, civil commitment under CETA is so much more dangerous because under the IDRA, under a conditional release order, the United States has arrest authority as soon as it has probable cause that a person has failed to comply with the conditions of release and if you look at some of the orders and I cited a bunch of them in my brief, if you look at some of the orders, you can see that every one of these conditional release orders includes detailed requirements for behavior and checking in with parole officer. Now, if Mr. Seth violated those conditions under civil commitment under CETA, what DDS would have to do is go to the family court and seek an order transferring Mr. Seth to another location and by then, he may well have absconded. So, it is not the same to say that conditional release under the IDRA which has never been discussed is the same thing. This is fatal to Mr. Seth's reasonable accommodation claim because the law, the regulations specifically state that a government must offer an accommodation only if it is necessary to avoid discrimination on the basis of disability. That's in the regulations. Now, here, the alleged discrimination is unnecessary institutionalization and it is not necessary for the district to assume legal custody over Mr. Seth and remove him from federal custody for him to receive this release. If, as he alleges, he can be safely released to the community, the United States has to give him that relief. Well, I don't understand that argument then. The federal government has civilly committed Mr. Seth. Is that correct? Yes. Yes. Okay. So, we're dealing with that situation. Yes. So, let me explain how the statute works. Perhaps that will help. The initial civil commitment that the Eastern District of North Carolina ordered does not contemplate anything other than institutionalization. But at any time after that hospitalization, if the director of the hospital thinks that he can be safely treated in the to the community. Now, what I want to understand is the Attorney General wrote to the District of Columbia and you said something like, well, if services existed in the District of Columbia or that the District of Columbia would provide, then, and maybe I misunderstood your argument, he would be released under the IDRA. No. And perhaps I misspoke. The United States would release Mr. Seth to the District if the District successfully committed Mr. Seth under CEDA. Those are the only circumstances. It's not about services. How could the District of Columbia do that when he is under a federal civil commitment order? I think the way it would work, and as you know, we believe this would be greatly dangerous, but I think the way it would work is that Mr. Seth would remain under the custody, the legal custody of the United States while civil commitment proceedings were going on in the District of Columbia, and then if those were successful, custody would transfer. Now, of course, we have concerns as to whether he can even be committed under CEDA, but based on the complaint, that's certainly a possibility that, but the United States would retain, I think this is what you're asking, the United States would retain custody until civil commitment was secured in the District. So your view of the statutory scheme is that for Mr. Seth to obtain the local services he seeks, he should what? File what? No. I mean, okay. So if what he wants is to be treated in the district in a community-based setting, he can petition or file some sort of a motion, I don't know the exact procedure, in the Eastern District of North Carolina for conditional release, and the district is willing to consider, of course, we would have to be assured about safety and stuff like that, but the district is willing to consider. But I thought the Eastern District of North Carolina said that the matter of services was not a matter it was considering. Yes, and I can explain that. So why look back at the openness? So I can explain that. But what I'm concerned about, just so you're clear, is there seems to be sort of a circular argument here. And the problem is, time's passing, and Mr. Seth, at least according to the allegations we have, is not receiving any services. All right? He's locked up at least 22 hours a day in isolation because everybody's concerned about his inability to follow rules and regulations, and he would be a danger. So how do we break this circle? And that's what I'm trying to understand. And I thought the federal statute had in mind that the federal government really wants the state, in which I'm including the District of Columbia for purposes of argument, to handle these matters and provide the services. And indeed, it's already paid for them. And if the federal government, in Mr. Seth's case, was so concerned about it, it could even contract for local services. But it hasn't done any of that. So as I said, the most direct way to do this is to sue the District of Columbia. But I'm not clear, even if it wins, where that gets it, except to have another bit of litigation. And I thought the Attorney General's letter was a way to try to break this vicious cycle and implement the federal statute. So I think that I can clear up some of these questions, if you'll bear with me. I'm going to start by explaining the proceedings in the Eastern District of North Carolina, because I understand that they appear circular, but they are not actually circular. No, I don't think they appear circular. I think where we are now appears circular. The Eastern District didn't have anything before it. All it had was evidence of dangerousness. So it found dangerousness, all right? But as soon as Mr. Seth filed his complaint, he had not been committed, and there had been no finding of dangerousness. Is that right? So there had been no legal finding of dangerousness. There had been a certificate of dangerousness filed. But I would like to explain, because I do think this will answer your question regarding what happens in the Eastern District of North Carolina. The judge there was right at the initial civil commitment proceeding to say that whether the district could provide services was irrelevant because the district was not taking custody. Now, there's a difference between taking custody, which would require the federal government to let go of custody and have commitment under CEDA. There's a difference between that and allowing some sort of conditional release where he remains in the custody of the initial order, the initial order of commitment. At that point, the question of whether conditional release is appropriate becomes ripe. And had Mr. Seth at any time after that civil commitment raised the question with the Eastern District of North Carolina about whether he could be safely treated in the community, that judge would have had to consider not just the services the district could provide, but the services that any legal entity could provide, any private entity could provide. And the district court a year ago urged Mr. Seth to do this. In its order of dismissal, there's that long footnote on, I believe it's on JA-40. There's a long footnote where he explains, go to the Eastern District of North Carolina and seek some relief. And Mr. Seth has filed nothing in that jurisdiction. He's hoping to make, force the district to pull him completely out of federal custody. And as I explained, having him out of federal custody is incredibly dangerous. He could easily abscond and return to hurting children in the District of Columbia. So I hope that answers your question. We're not looking at a circular, the United States cannot turn around and then say, well, if the district won't assume custody, we're not going to conditionally release him. This is not a catch-22. The district does not want to assume custody over Mr. Seth because that would be incredibly dangerous for the public. But the district will consider providing him services under a conditional release order because that would be less dangerous because the United States could then put him in a lockup facility if he doesn't comply. I also would like to address not just the question of whether an accommodation is necessary, although I think that disposes of the entire case, but whether the district is even a proper defendant under any claim under Olmstead and the integration mandate. There's only two types of Olmstead cases. There are the type like this where a person is forcibly detained via civil commitments. And there are cases where an individual is forced to self-institutionalize because that's the only place they can get the care they need to survive. And the district has done neither of these things. The district is not the entity that has forced Mr. Seth into commitment. And so I want to talk about Olmstead itself. I think this is important because the elements of Olmstead follow the question presented to the court. And the question presented itself assumes custody. In the first paragraph of the case, the question presented is whether the ADA may require placement of persons with mental disabilities in community settings. And so there is no case that Mr. Seth has cited or that I've been able to find in which the Olmstead mandate applied to a government that neither had custody over an individual nor was denying it services and therefore forcing the person to self-institutionalize. And Mr. Seth repeatedly says the district is denying him services other people get, but that is simply not so. Mr. Seth has been found eligible to receive services in the district. He's just not here to get them. And there's no authority indicating that helping a person return to the district is a service to which any individual is entitled. I also want to address with the court's indulgence the question of forfeiture because Mr. Seth keeps arguing that we have forfeited these key arguments. And this is also not so. With regard to suing the long defendant on JA-204, the district argued- I think your question was limited to your argument about discretion. That's all. Oh, with regard to that, no, we also did not forfeit the prosecutorial those came up under the rubric of the CEDA argument because that's where the argument was. But it was certainly there. At JA-252, the district argued that it had discretion under CEDA and had no obligation to commit. And at JA-255, we argued that there's no allegation of accommodation that is reasonable. And again, this is also something that the district passed on. The district court talked about how this was not something that was mandatory. Now, I can understand that there are some matters where an agency would normally have discretion where the ADA could require the district to step in, but this is simply not that type of case. As I've said, it's not an accommodation that is necessary. And it's also not something that is the type of accommodation that the district would ever offer. For example, if a person with a disability flew out to California but only got a one-way ticket and they needed a ticket back home in order to receive services in the district, it would not be an accommodation to return them to the district. Or for example, if someone was jailed in another state, a person with disabilities gets jailed in another state and needs bonds to be posted so that they can come back to the district and receive services while awaiting trial. That is not something that we would say that the district is responsible for doing. And so these arguments have not been forfeited. And we have made it very clear that under the Olmstead claim, it's the wrong defendant. And even if this is categorized under the reasonable accommodation rubric, it simply isn't necessary. It's incredibly dangerous to suggest that the district should have to assume custody when there's a much safer way that if the allegations and the complaints are true and Mr. Seth can safely be served in the community, the United States legally has to provide him the same relief. So let me ask you, where is Mr. Seth physically now? I believe he's in Massachusetts. He's at FMC Devins. So if he files in the Eastern District of North Carolina a motion for conditional release, as I understand the statutory scheme, he would have to present to the district court with a program of services that the District of Columbia has indicated it would provide to him that would address the dangerousness concern or that he has developed a program based on private services. Fred admitting for a moment who pays. Before the Eastern District District Court judge grant conditional release. Is that correct? I don't think that's entirely correct. Those are certainly two ways. Would the district court grant conditional release? I missed the first part of that question. I'm sorry. But I think that I understand the question. The district court itself can develop the plan in conjunction with Mr. Seth. I don't imagine that all of the individuals who have obtained conditional release, and there are many, there are lots of orders that you can find on Lexis in the district court filings. There are lots of conditional release orders. And I don't get the sense that every one of those was developed by the person with disabilities themselves. But certainly he would file something in the district court saying, I can be safely treated in the community. And then that would be a question of fact in the district court. And the district court would look at the different options. It would look at the different types of plans. And like I said, there are a lot of them published on Lexis that you can look at. My question is yes, that either Mr. Seth has to come up with this plan or you say the district court could come up with it. But as a practical matter in litigation, we all know that the moving party has to present something to the district court. And in a conditional release, it's going to be a moving party that has at least the initial burden of demonstrating to the district court that there's some reason even to consider conditional release. I'm not going to speak as to who is the moving party and who bears the burden. But yes, at the end, they would have to come up with a plan. I don't know who bears the burden. I'm dealing with what you've been telling me this morning is that Mr. Seth could go to the Eastern District of North Carolina and seek conditional release. Yes, he can do that. Yes. I'm only a moving party at this point. And so he has to have some type of program. And what he has now, as I understand it, is the District of Columbia is refusing to even answer the Attorney General's letter or say, if you file and go to the Eastern District of North Carolina, we will support conditional release in light of this program. Okay, I understand your question. So I have three answers. And if you'll bear with me, number one, Mr. Seth doesn't have to be the moving party, because there are also independent obligations under CEDA for the director to recertify the need to continue commitment. But we're going to leave that aside and let's address the Bureau of Prisons. Yes, the director of the facility. Yes, and who have been telling us repeatedly this morning that there is so much dangerousness involved. I don't see the director being the moving party here. Absolutely. So let me answer your, I just wanted to clarify that. But let me answer your question as to Mr. Seth moving for this. The United States has never asked the district to consider any sort of placement plan that would involve conditional release. And that's very different from a blanket letter saying, will you assume custody over this individual? Is that the nature of the Attorney General's letter here? Yes. Yes. I mean, there's also questions of fact, because the district didn't receive the letter until after commitment was final. But that's beside the point in the complaint. How do we bring this to some sort of resolution? And the district thought, since the federal government's already paid 70% of the funding for this, and doesn't want to set up its own independent operation, that let's get the district to agree to a program. And the district won't agree to that. And until that happens, Mr. Seth, a wealthy, can't afford to I'm just trying to understand how you, how the District of Columbia sees the path in what, I think everybody would say, isn't on, the district court said, is a troubling situation. Yes. And I am happy to address that. Yes, the District of Columbia is interested in opening a being returned to the District of Columbia. This isn't about money. This is about who retains custody. Now, Mr. Seth has some plans. Has that been put in writing to counsel for Mr. Smith, Mr. Seth? No, because we can't make time. I've heard it. Well, I mean, we indicated it in our brief, and we certainly have talked about receiving relief from the district court. But I can tell you right now that the district is interested in entering into those discussions. Now, there's a lot that has to be done that we would need assurances of. If Mr. Seth cannot be safely treated in the community, obviously, we would not be able to come up with a plan for conditional release. But the district is very I understand, but can we just deal with this case where the two plans that have come up, according to the evidence that was presented to the district court here, understood the dangerousness without services, but they thought these plans provided services that would address that concern. So can we just deal with that? Yes, it is entirely possible. Entering into discussions. And so according to the pleadings here, there have been two plans. And so what happens next? So there have been two plans. They're both fairly old, but they might still be good plans. And those would be a great starting point. And if indeed one of those plans is still viable, given if there would have to be updated assessments. I mean, he has been in federal custody for a while, and we have in the meantime learned. I don't understand. Are we talking about discussion council to council? I know. I know. I suing the District of Columbia saying you had a plan, you agreed to move forward, you changed your mind, you have this obligation. And now you're talking about the district is happy to enter into discussion. Regarding conditional release, and that has never been something that Mr. Seth has entertained with us. Mr. Seth has insisted that the district has to assume custody. And if the district assumes custody, it cannot protect the public from Mr. Seth. And so the district is, as I said, and I'm telling you this now, happy to address that. The conversation would be between DDS itself. It would not involve appellate counsel. It would not involve trial counsel. We don't want, we don't think the ADA has anything to do with this. We don't think we have any obligations under the ADA. But we would like... I'm sorry? You said discussions between DDS and who's the other party? I'm assuming Mr. Seth's attorneys. And I'm assuming also the United States. I mean, most of these conditional release plans are not disputed in the district court. Most of these come up as a result of conversations between like, sort of like a plea agreement. There's a conditional release agreement where everyone worked out a plan and then they present it to the district court. So the people that I'm assuming would be involved in this discussion would be DDS and DDS's counsel. It's direct counsel, but the director of DDS and Mr. Seth's attorneys and the US attorney who is handling his ongoing civil commitment proceedings in the Eastern District of North Carolina. And I think that it's assuming that it is true that he can be treated safely in the community. I think that it could work. But I don't think the right vehicle for this is to sue us under the ADA and accuse the district of discrimination, because there's been no evidence of discrimination. The district didn't do anything to Mr. Seth. It didn't place him in this institution. And all it has done is said that the district does not itself have the capacity to safely assume custody over him. I will also note that even if the district was could easily go directly to the private entity. He could go directly to this holistic services and ask them to create a plan and then they could present that to the United States. The District of Columbia doesn't need to be involved in this. We're happy to be involved in it, but they don't need us for this. And this is where we get down to the fact that he's trying to squeeze something that does not fit into the ADA under a reasonable accommodation claim when it is necessary for the district to be involved at all. I haven't been listening for chimes, but I imagine I have far exceeded my time. So I would leave the court just with two notions. Number one, the district is not the right defendant here. The United States is. And number two, that even if this were to fall under a claim against the district under the ADA, Mr. Sess has not alleged an accommodation that is necessary for him to receive the relief he seeks. Thank you, counsel. Thank you for taking your time to answer a question that took you beyond your time. Mm-hmm. So this is Eve Hill. I would like to respond just to a couple of things and answer any further questions if you'd like. Oh, counsel, or appellant. Yeah. There were a lot of facts in Ms. Johnson's discussion, like the fact that D.C. has no connected according to my computer here. So I gather that... Can you hear me? Yes. Good. Please carry on. Okay. So there were a lot of facts in Ms. Johnson's presentation, and I think that emphasizes the fact that the dangerousness argument that they're making is a fact question, as well as an affirmative defense. There are also some of them I simply have to disagree with as a factual matter. D.C. does have lock-up facilities, including St. Elizabeth's, and has sent people to out-of-state locked facilities. So that's a fact issue. We'd be happy to litigate that. And then the... Counsel, I agree. I just decided not to even ask about that because I knew it was wrong, but I'm trying to get to the heart of this. And as I understand the District of Columbia, it's always been clear that you sued the wrong defendant, in its view, and that there's no allegation here where an accommodation is required by the United States. So the district says happy to enter into negotiations in regard to your going back to North Carolina. And what's your response to that? One response is that's the first we've heard of that. But that goes to their argument that it's not necessary for D.C. to do anything. That's like arguing that if a person with HIV in D.C. were refused services at the D.C. homeless shelters and went to Maryland and then was in Maryland, the D.C. would have no further obligation for him. This is not just an Olmstead case. It's a denial of services on the basis of disability case. The D.C. denied those services before federal commitment, continues to deny them now, even if the current situation, and this case was filed before federal commitment had happened, if D.C. now couldn't do injunctive relief to get him out of the Bureau of Prisons, which I don't believe is true, he would still have a remedy in terms of damages. We believe that they can get him out. What is your strongest allegation in either the complaint or the amended complaint suggesting that the district has denied these benefits by reason of his disability? I believe the complaint does say those things, and it additionally says they're intentional for purposes of damages. And those allegations need to be taken as true. There isn't any other basis other than the fact that he has intellectual disability, and the current director of DDS thinks people with intellectual disability are dangerous. We also believe every assessment that's been done shows that he is not dangerous, that the services to be provided here will significantly reduce any danger that's available, and that this is completely within the district control. The idea that Maryland could step in or California could step in or the BOP could step in is completely hypothetical and not our obligation to plead. Anything further? No, thank you so much. Thank you, counsel. Thank you. We will take the case under advisement.
judges: Henderson, Rogers, and Garland